201943feld s

1   UNITED STATES DISTRICT COURT
2   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x
3   UNITED STATES OF AMERICA,

4              v.                            14 CR 604(VB)

5                                           SENTENCE

6   TYRONE FELDER,
    also known as Man Man,
7
                   Defendant.
8
    ------------------------------x
9

10                                  United States Courthouse
                                    White Plains, New York
11                                  April 3, 2019

12

13

    Before:   THE HONORABLE VINCENT L. BRICCETTI, District Judge
14

15                          APPEARANCES

16

17  GEOFFREY S. BERMAN
         United States Attorney for the
18       Southern District of New York
    CELIA V. COHEN
19  HAGAN C. SCOTTEN
         Assistant United States Attorney
20

21

    ANDREW G. PATEL
22  BENJAMIN A. SILVERMAN
         Attorneys for Defendant
23

24

25

                   CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                            (914)390-4103

1    THE DEPUTY CLERK:  United States of America against

2    Tyrone Felder.

3    Will counsel please note their appearance for the

4    record.

5    MS. COHEN:  Good afternoon, your Honor.

6    Celia Cohen and Hagan Scotten for the government.

7    MR. PATEL:  Good afternoon, your Honor.

8    Andrew Patel and Benjamin Silverman for Mr. Felder.

9    THE COURT:  Okay.  Have a seat, everybody.

10   This matter is on for sentencing today, the defendant

11   having been found guilty after a jury trial of two counts of

12   carjacking resulting in death, three counts of Hobbs Act

13   robbery or Hobbs Act robbery conspiracy, two counts of

14   discharging a firearm in relation to a crime of violence and

15   two counts of brandishing a firearm in relation to a crime of

16   violence.

17   I've reviewed the following materials in preparation

18   for sentencing:  The revised presentence report dated January

19   24th, 2019 prepared by Probation Officer Nicole Brown-Morin.

20   I've reviewed defense counsel's sentencing memorandum dated

21   February 25th, 2019.  I've also reviewed the government's

22   sentencing memo dated March 29, 2019.  I received two letters

23   today from the government.  One was from Mr. Bah, one of the

24   victims in this case, Mr. Bah's son.  His name is Elhadji,

25   E-L-H-A-D-J-I, Oumar, O-U-M-A-R, S. Bah.  It's dated April 3rd,

```
 1      2019.
 2                  Have you received a copy of this, as well, Mr. Patel?
 3                  MR. PATEL:  Yes, your Honor.
 4                  THE COURT:  And I also received an e-mail, which was
 5      forwarded to me by the government, from Mr. Kane's wife.  I'm
 6      sure I'm going to mispronounce the name, and I apologize for
 7      that, but the first name is spelled M-A-M-E, Mame, M-A-T-Y,
 8      last name G-U-E-Y-E.  And that's dated April 2nd, 2019.
 9                  Same question.  Have you received a copy of this,
10      Mr. Patel?
11                  MR. PATEL:  Yes, your Honor.
12                  THE COURT:  Okay.  Has anything else been submitted
13      that I failed to mention?
14                  MS. COHEN:  No, your Honor.
15                  MR. PATEL:  No, your Honor.
16                  THE COURT:  Mr. Patel, have you read the presentence
17      report and discussed it with your client?
18                  MR. PATEL:  I have, your Honor.
19                  THE COURT:  Mr. Felder, have you read the presentence
20      report?
21                  THE DEFENDANT:  Yes.
22                  THE COURT:  Have you discussed it with your attorney?
23                  THE DEFENDANT:  Yes.
24                  THE COURT:  And, Ms. Cohen, I assume you're going to
25      handle this.  Have you read the presentence report?
```

201943fields

```
 1          MS. COHEN:  I have, your Honor.

 2          THE COURT:  Okay.  The calculation of the guidelines

 3  is somewhat complicated, but let me just try and summarize what

 4  the Probation Department says in the presentence report.  It's

 5  set forth at pages 8 to 14 of the report, of the revised

 6  report.

 7          Each of the non-firearms counts is treated as a

 8  separate group under the guidelines except for Count Eleven,

 9  which is the Hobbs Act conspiracy count, robbery conspiracy

10  count, which is grouped with Counts One, Three, Five and Seven.

11          The highest base offense level is level 43 for each

12  of the carjacking counts.

13          The non-carjacking robbery counts each have a base

14  offense level of 20.  And as to Count Three, there's a

15  two-level increase because a victim sustained a bodily injury.

16  That's the Hobbs Act robbery count relating to the minimart in

17  Yonkers.

18          Two levels are added to the group with the highest

19  offense level under the multiple-count adjustment rule such

20  that the combined adjusted offense level for Counts One, Three,

21  Five, Seven and Eleven is level 45.

22          Also, the defendant meets the definition for career

23  offender under Section 4B1.1(a) of the guidelines such that his

24  criminal history category is category VI.  Nonetheless, under

25  Application Note 2 to the sentencing table, in Chapter 5, part
```

1    A, where there's an offense level higher than 43, it's treated

2    as offense level 43.  So even though the offense level as

3    calculated is 45, under the guidelines, it actually gets

4    changed to level 43.

5              At level 43, criminal history category VI, the

6    sentencing range is life imprisonment on Counts One, Three,

7    Five, Seven and Eleven.

8              In addition, as to the firearms counts, which are

9    Counts Two, Four, Six and Eight, the Court is required to

10   impose a mandatory minimum sentence on each count, which must

11   run consecutively to each other count and also consecutive to

12   the entire 26-year sentence imposed on July 28, 2017 in the

13   case tried before Judge Caproni, which is 14 Crim. 546.

14             Counts Two and Eight each carry a ten-year mandatory

15   minimum, and Counts Four and Six each carry a seven-year

16   mandatory minimum.

17             So the guidelines range, according to the presentence

18   report, is life imprisonment followed by 34 years of

19   imprisonment; the supervised release range is one to five

20   years; and the fine range is $25,000 to $250,000.

21             I hope I've summarized that accurately from the

22   report.  If I haven't, this would be a good time to tell me.

23             Let's start first with the factual statements in the

24   presentence report.  Does the government have any objection to

25   the factual statements in the presentence report?

1      MS. COHEN:  No, your Honor.

2      THE COURT:  Mr. Patel, does defendant have any

3  objection to the factual statements in the presentence report?

4      MR. PATEL:  Your Honor, Mr. Felder continues to

5  maintain his innocence of these charges, but we have no

6  objection to the report as it's written.

7      THE COURT:  No, of course he has a right to maintain

8  that, but I presided at the trial, and I think that the jury's

9  verdict was clearly correct in light of the evidence that I

10  heard and saw.

11      So the Court adopts the factual statements in the

12  presentence report as the Court's own findings of fact for

13  purposes of sentencing.

14      Does the government object to the guidelines

15  calculation or anything else that's in the report?

16      MS. COHEN:  No, your Honor.

17      THE COURT:  Same question to you, Mr. Patel.  Does

18  the defendant object to the guidelines calculation or anything

19  else in the report?

20      MR. PATEL:  No, your Honor.

21      THE COURT:  Okay.

22      Based on my review of the presentence report and my

23  own evaluation of the guidelines, I adopt the guidelines

24  calculation in the presentence report and conclude that the

25  final offense level is 43, criminal history category VI, which

yields a sentencing range of life imprisonment on the

odd-numbered counts, One, Three, Five, Seven and Eleven.  In

addition, the Court must impose a total mandatory minimum

sentence of 34 years on Counts Two, Four, Six and Eight, all of

which must run consecutively to any other sentence imposed in

this or any other case.

     And just for the record, Counts Nine and Ten do not

name Mr. Felder.  Is that correct?  So he was convicted on

Counts One through Eight and Eleven.

     MS. COHEN:  That's correct, your Honor.  Nine and Ten

concern just Mr. Martin.

     THE COURT:  Okay.  There's been no motion for any

guidelines-based departure from the applicable range.

     Does the government wish to be heard on sentencing?

I've read your submission, of course, but you're welcome to say

anything you like.

     MS. COHEN:  Yes.  Thank you, your Honor.

     As the Court is aware, the government doesn't make

any sentencing recommendation lightly, and certainly not a

recommendation for life imprisonment.  Our recommendation here

is not based solely on the fact that two innocent lives were

taken, although that would justify life imprisonment.  We

recognize that there are gradations of conduct that can lead to

that.  It's the particular facts of this case, your Honor, and

specifically Mr. Felder's role in the offense, that we believe

1    justifies a sentence of life imprisonment.

2          We talked about some of those factors in our

3    sentencing submission.  For example, Felder's leadership role

4    in each of the crimes; his personal and direct responsibility

5    for killing both Mr. Kane and Mr. Bah; the particularly

6    egregious way in which Mr. Kane was killed, effectively

7    executed with a single gunshot to the back of his head on a

8    dirt road; and, finally, Felder's decision to engage in exactly

9    the same conduct exactly one week later.

10          Because we've discussed those factors in our written

11    submission, I'm not going to go over all of them again here,

12    but I do want to focus on the last factor, Felder's decision to

13    commit these crimes a second time.  In doing that, I want to

14    take a moment to talk about the robbery victims.  Their stories

15    should not get lost in light of the loss of life to Mr. Kane

16    and Mr. Bah.

17          As the Court probably recalls from the video, in both

18    robberies, Martin, Ewing and Smalls enter those stores armed

19    with guns provided by Felder.  There is no question that

20    Mr. Felder knew what was going to happen in those stores.

21          At the minimart, Mr. Martin grabbed Ms. Colavecchio.

22    He dragged her into the store, threw her to the ground, and hit

23    her across the face with a gun.  At the same time, Mr. Yahia,

24    the owner of the minimart, was trapped behind the register; at

25    times, two guns, sometimes three guns pointed at his head as he

 1    was ordered to empty the register.  Meanwhile, the other store

 2    employee was forced to lay prone on the ground, a gun also

 3    pointed at his head.

 4          At the Dunkin' Donuts, Mr. Ewing, Mr. Martin and

 5    Mr. Smalls again run into the store armed with guns from

 6    Mr. Felder.  They leap over the counter and they chase two

 7    employees to the back of the store, who hide in the bathroom,

 8    holding the door shut, fearing that this might be how they die.

 9          Those victims had the courage to come into this

10    courtroom and sit right there and confront Mr. Felder and

11    testify about the terror of those days.  That, your Honor, is

12    extraordinary.

13          Their terror, the threat that people just going about

14    their everyday lives might be shot over a few dollars, that

15    apparently stirred nothing in Mr. Felder, the same way that the

16    senseless killing of Mr. Kane apparently stirred nothing,

17    because the Court knows exactly what happened.  One week later,

18    Mr. Felder agreed to do the same crimes all over again.  The

19    same way as last time, in Tommy Smalls' words.  The same way as

20    last time meant random and needless, even extravagant loss of

21    innocent life.

22          When I say random, I'm thinking about the testimony

23    of Mr. Barrie.  As the Court might recall, Mr. Barrie was the

24    other livery cab driver who attended the same mosque as

25    Mr. Bah.  On August 12th, Mr. Barrie was approached as he drove

1    down the street, hailed by one man.  He pulls over.  And this

2    is clear from the video.  One man becomes four.  They approach

3    the vehicle, and they're clearly looking around to see if

4    there's a camera in the car.  Something spoke to Mr. Barrie,

5    and that saved his life.  He refused to let Mr. Felder and the

6    others into his car.

7          The next car that pulls over on the video is

8    Mr. Bah's.  Mr. Barrie's story epitomizes the randomness, the

9    arbitrariness of Felder's violence.  And when I say needless,

10   I'm thinking of Felder shooting Mr. Kane.  As we described in

11   our sentencing submission and as Mr. Smalls described on that

12   stand, Mr. Kane had already ceded control of his car.  He stood

13   frozen in fear.  At that moment, there was no struggle.  There

14   was no accidental firing of a gun.  There was a purposeful

15   execution of a man that was totally unnecessary.  Finally, your

16   Honor, when I say extravagant, I'm thinking of Felder shooting

17   Mr. Bah in the head, dumping his body in the middle of the

18   street and then driving off in the bloody car, only to abandon

19   it a short distance away.  This is not to suggest that some

20   successful use of Mr. Bah's car would in any way mitigate his

21   murder, but it underscores how little value Mr. Felder placed

22   on the life of another human being.

23         Your Honor, the total lack of regard for human life

24   evidenced by Felder's decision to repeat on August 12th what

25   had been done exactly one week earlier justifies and, indeed,

1    requires a sentence of life imprisonment.  Such a sentence is

2    necessary to reflect the seriousness of the offense, to promote

3    respect for the law, to promote general deterrence and,

4    frankly, your Honor, to protect the public from Mr. Felder.

5            I would like to end by recognizing the victims'

6    family members, some of whom are here today.  Members of

7    Mr. Kane's and Mr. Bah's families attended every day of

8    Felder's trial.  In the case of Mr. Bah's son, it was sitting

9    in this courtroom that he first learned the man on trial was

10   the man personally responsible for killing his father.  In

11   their letters to the Court, Mr. Kane's and Mr. Bah's family

12   members simply ask for justice.  We respectfully submit that,

13   in this case, justice means a sentence of life imprisonment.

14           THE COURT:  Okay.  Thank you, Ms. Cohen.

15           And thank you to the family members of Mr. Bah and

16   Mr. Kane who attended today.  I had heard yesterday there was a

17   possibility that one or more of the family members wanted to

18   speak today, but I take it that they're just going to rest on

19   the letters that were submitted.

20           MS. COHEN:  That's correct, your Honor.

21           THE COURT:  That's fine.  They absolutely have the

22   right to be heard if they wish to do so.

23           Okay.  Mr. Patel, do you wish to be heard?

24           MR. PATEL:  Yes, your Honor.

25           Your Honor, I'll start out near where Ms. Cohen left

1  off.

2          There is nothing that could ever mitigate what

3  happened to Mr. Bah and Mr. Kane.  That is not possible.  That

4  is not the purpose of mitigation.  And there is, unfortunately,

5  although I wish there was, nothing that we could say that would

6  ease the pain of the families sitting in the back of the

7  courtroom.  The purpose of mitigation is entirely different.

8  It is facts about Mr. Felder's life that demonstrate he did not

9  have the kind of experiences that we tend to assume as normal,

10  but, rather, as the government acknowledged in their letter, he

11  experienced a childhood of deprivation and neglect that is just

12  unimaginable.  And that does mitigate his sentence; not his

13  culpability, but what is the appropriate punishment here.

14  These are horrific crimes, but the question is is there is a

15  possibility of redemption.

16          Mr. Felder has certain God-given abilities that will

17  mature over time.  As I said in my letter, Mr. Felder once told

18  me that he's not educated, but he's not stupid, and one of

19  those can be changed.  He can be educated and find ways to use

20  his intelligence constructively.

21          One of the things that is in the government's letter,

22  for the lack of a better word, I feel obligated to object to,

23  your Honor.  The government wrote, after acknowledging the

24  damage done to children who were raised in the environment

25  Mr. Felder was raised in, wrote that this mitigation does not

1    explain the conduct.  I would submit to your Honor that that is

2    not a proper argument, and let me explain why.

3           There are a series of United States Supreme Court

4    cases, starting with Penry v. Lynaugh, 492 U.S. 302;

5    Tennard v. Dretke, 542 U.S. 274.  Most of these cases come out

6    of appeals from the Fifth Circuit, where the Fifth Circuit did

7    exactly what the government said; that, for mitigation, there

8    had to be some nexus between the mitigation.  That is, the

9    damage, the mental health, whatever the mitigation was, there

10   had to be some nexus between that and the crime.  And the

11   Supreme Court has rejected that argument over and over again.

12          The Second Circuit, in United States v. Fell, 531

13   F.3d 197, 222, in 2008, said very explicitly, and I quote,

14   "Mitigating evidence need not have a nexus to the murder for

15   which he" -- that is the defendant -- "has been convicted."

16   The government, when they make that argument, they're saying,

17   yes, there's mitigating evidence, but, because it doesn't

18   relate to the murder, you should ignore it.

19          I would ask your Honor to consider the facts of

20   Mr. Felder's life in determining what is an appropriate

21   sentence.  There is no nexus link required under 3553(a) which

22   requires your Honor to consider Mr. Felder's background in

23   determining an appropriate sentence.

24          What I am asking your Honor to do is to impose a

25   sentence of 60 years; effectively, a sentence of 60 years.  It

means that Mr. Felder will serve 720 months.  He will be in his

seventies when he gets out, but he will have the possibility of

getting out.  He will have that hope.  And that hope will

hopefully inspire him to get an education in the hope that he

will be able to use it.  It will inspire him to behave

according to the prison rules in the hope that he can get out

then.  To get out when he's in his late seventies would require

him to get credit for time served.

        The government mentioned in the presentence report

that Mr. Felder's had eleven shots, as they say, for almost

five years that he's been in the Bureau of Prisons awaiting

this day.  One of those, your Honor, is for destruction of

property.  I happen to know a little bit about how that came to

be.  It's a little bit of a -- let me just tell you.

        After the trial, Mr. Felder was moved, for reasons

that no one understood, from the MDC to the MCC, and he was

moved to the SHU in the MCC.  The Bureau of Prisons manages

groups who might be hostile to each other, shall we say, by

keeping them in different facilities.  And I called legal

counsel at the MCC, Adam Johnson, and I said can we get

Mr. Felder back to the MDC because he can never go into general

population in the MCC.  And Mr. Johnson acknowledged that he

had no idea why Mr. Felder was in the MCC and that he could not

go into general population because it would be a problem.

        Because Murphy's law is irrefutable and undeniable,

1    of course, Mr. Felder was released into general population at

2    the MCC, where he was promptly attacked by five people who he

3    managed to fight off and broke a sprinkler in the process of

4    that fight.  That is the destruction of property for which he

5    got a shot.  And 15 minutes after being released from the

6    Special Housing Unit, he was back in it and, shortly

7    thereafter, he was back in the MDC.  And there was no

8    proceeding on that shot.

9           To that end, your Honor, over the almost five years

10   that I've represented Mr. Felder, very few of my visits to him

11   have been in the SHU.  He has generally been in the MDC in

12   general population and complying with most of the regulations

13   that he has been required to live by.

14          But I do have a request, your Honor.  I would request

15   that your Honor recommend to the Bureau of Prisons that

16   Mr. Felder be designated to the federal correctional complex at

17   Allenwood, which is in Whitetail Deer, Pennsylvania.  The

18   federal complex at Allenwood has every imaginable level of

19   facility from a USP to two levels of FCI camp; as your Honor

20   knows, sort of a famous club fed.  Not the original.  Also,

21   Allenwood is down the block -- not right down the block, but a

22   few miles down Pennsylvania State 15 is Bucknell University,

23   and Bucknell University, for decades, has had an educational

24   program with the USP at Lewisburg and with the facility at

25   Allenwood helping to educate inmates.  And it is within the

1   geographic location, northeast area, under the new First Step

2   Act geographic restrictions it applies.  It has every

3   imaginable security option that could be available and is

4   someplace where Mr. Felder could get that education that he

5   hasn't had a chance to get.  So we would ask your Honor to make

6   that recommendation.

7          I've submitted to your Honor an order -- a proposed

8   order requesting that Mr. Felder be permitted to appeal his

9   conviction and his sentence, presumably, in forma pauperis,

10  without the payment of fees.

11         THE COURT:  Isn't that automatic if he was assigned

12  CJA counsel in the district court?

13         MR. PATEL:  No; it is not.

14         THE COURT:  I've never had someone ask me to sign an

15  order like this before.  Of course he should be allowed to

16  proceed in forma pauperis.  I'm not suggesting that's wrong.

17         MR. PATEL:  I asked your Honor to sign this order to

18  relieve appellate counsel of the rather egregious process that

19  you have to go through unless it's done by the district court.

20         THE COURT:  What's the egregious process?  I was

21  appointed because my client is in forma pauperis.  How

22  complicated is that?

23         MR. PATEL:  If that was the process, there wouldn't

24  be a problem.

25         THE COURT:  You know, I did what you did for a long

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

 1    time.

 2              MR. PATEL:  Correct.

 3              THE COURT:  I don't remember it being so complicated.

 4    But maybe I've been out of the gate for a while.  Sorry.

 5              MR. PATEL:  It's a whole nother process with a rather

 6    complicated form and complete financial disclosure, much

 7    simpler than the financial -- much more complex than the

 8    financial disclosure.  And so just in the name of saving money

 9    and expediting things, I would ask your Honor to issue this

10    order.

11              I have done this numerous times.  You only have to

12    learn your lesson once by not doing it to realize there's a

13    good reason to do it.

14              THE COURT:  I'll sign that order.

15              MR. PATEL:  Thank you very much, your Honor.

16              And the other order that I ask your Honor for is to

17    relieve me as counsel for Mr. Felder and have Mr. Silverman

18    remain on to do the appeal.

19              THE COURT:  That order I'm not going to sign

20    because -- and I had a hunch that that was contrary to the CJA

21    plan, and I looked it up, and it says that -- this is with

22    respect to CJA.  You are the CJA attorney, not Mr. Silverman.

23    I allowed him to be on the case with you, but you were the

24    person that was appointed.  And it says:  "Counsel," which is

25    you, "must file a timely notice of appeal.  While there may be

                CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
                            (914)390-4103

1   benefits to maintaining continuity of counsel, trial counsel

2   may determine that the client's interests are best served by

3   new appellate counsel.  This should be a significant degree of

4   deference to the position of trial counsel regarding whether,

5   in each matter, continuity is in the best interest of the

6   client and consistent with counsel's professional skills and

7   obligations.  Assigned counsel has the duty to file the notice

8   of appeal, but thereafter may seek to be relieved by the Court

9   of Appeals.  Counsel shall continue to represent the appellant

10  unless and until he or she has been notified by the Court of

11  Appeals that other counsel has been appointed or that his or

12  her services are no longer required."

13          And I knew that to be the rule, but I wasn't sure

14  where to find it.  It's in the CJA plan, paragraph or section

15  VIII.

16          So you're going to have to make that application --

17  I'm not saying that it wouldn't be granted, but you'll have to

18  make that application to the Court of Appeals.

19          MR. PATEL:  No problem.

20          Your Honor, as know, we certainly were concerned with

21  continuity of counsel.

22          THE COURT:  And there will be continuity of counsel.

23          MR. PATEL:  Exactly.

24          THE COURT:  So it would be shocking beyond belief if

25  the Court of Appeals denied that application, but it's for them

1    to decide, not for me.  That's really the point.

2              MR. PATEL:  Very well.

3              THE COURT:  So I don't doubt that there will be

4    continuity of representation, but I think I'm precluded by that

5    rule from granting your request, so I'm going to deny it.

6              MR. PATEL:  Okay.

7              Your Honor, to get to the bottom line of this, in

8    spite of -- you know, Mr. Felder has family here today.  He has

9    a friend, Unique, who's been with him forever.  His half

10   brother is here.  His cousins are here.  There are people who

11   care about him.  He has talents and abilities.  He grew up in

12   circumstances that are simply unimaginable.  I mean, his older

13   brother was -- who is not much older, who was also a child, was

14   putting food on the table by selling drugs and committing

15   robberies.  That was the role model that Mr. Felder grew up

16   with.  He can do better.  He can learn to do better.  And I

17   would ask your Honor to impose a sentence that gives him and

18   his family the hope that, one day, he'll be able to show him

19   and all of us that he can do better on the outside.

20             Thank you, your Honor.

21             THE COURT:  Okay.  Thank you very much Mr. Patel.

22   And again, you have been on this case for a long time and,

23   consistent with your professional obligations generally and,

24   also, as a member of our Criminal Justice Act panel, you have

25   provided not just competent, but outstanding representation to

your client from day one, and I thank you on behalf of the

Court generally for that.

      Mr. Felder, do you have anything you would like to

say or any information that you would like to present before I

impose sentence?

      THE DEFENDANT:  No.

      THE COURT:  Okay.

      Well, let me say first that, in deciding the

appropriate sentence in this case, I have considered all of the

statutory factors set forth in Section 3553(a) of Title 18.

      And I'm not going to keep you in suspense,

Mr. Felder.  I'm going to tell you what sentence I intend to

impose, and then I'm going to explain why.

      Having considered all of those factors, I believe

that a sentence of life imprisonment followed by 34 years

imprisonment on the 924(c) counts is sufficient, but not

greater than necessary to comply with the purposes of

sentencing set forth in the statute.  And specifically, I

intend to impose a sentence of life in prison on Counts One and

Seven; twenty years on Counts Three, Five and Eleven with all

of the sentences on those five counts to run concurrently; and

I also intend to impose a sentence of ten years on each of

Counts Two and Eight and seven years on each of Counts Four and

Six, all of which will run consecutively to each other and

consecutively to the sentences imposed on the other counts;

1    and, finally, the 34-year term imposed on the gun counts, Two,

2    Four, Six and Eight shall also run consecutively to the

3    312-month, or 26-year, sentence imposed by Judge Caproni in

4    case number 14 criminal 546.  My reasoning for this is as

5    follows:

6          I presided at the trial of this case and I heard the

7    evidence.  I saw the videos.  And I was astonished at the

8    audacity and the brutality of Mr. Felder's crimes, crimes that

9    were deliberate, planned and callous.  There's just no question

10   that the seriousness of Mr. Felder's offenses combined with the

11   seriousness of his criminal history require that he spend the

12   rest of his life in prison.  No other sentence would be just

13   and no other sentence would protect the public from further

14   crimes by the defendant.

15         I have read Mr. Patel's sentencing memorandum and

16   listened carefully to his argument today, and I have no doubt

17   that Tyrone Felder's a very intelligent man who has the

18   capacity to do good things in his life.  I also have no doubt

19   that Mr. Felder is the product of a chaotic and dysfunctional

20   upbringing.  But there's some other things about which I have

21   no doubt as well.

22         First of all, I have no doubt that the innocent

23   victims who survived Mr. Felder's crimes will never be the

24   same.  I have no doubt about that.  A woman who just happened

25   to be sitting outside the minimart was pistol whipped and still

1    experiences blurriness in her right eye and frequent headaches.

2    The workers at the minimart and the Dunkin' Donuts were all

3    terrorized at gunpoint, and none of them will ever forget that

4    experience for as long as they live.  And, of course, the two

5    cab drivers, Maodo Kane and Aboubacar Bah, are deceased.

6            Mr. Kane went to work on August 5th, 2014 and he

7    never came back.  Felder came up with a plan to rob a livery

8    cab driver at gunpoint, steal his car and use the car to commit

9    armed robberies.  Mr. Kane was the unlucky cab driver.  And

10   after directing Mr. Kane to drive to a deserted block in the

11   Baychester area of the Bronx, Felder pulled out a gun and

12   ordered him to get out of the car.  Mr. Kane froze.  And a

13   co-defendant, Tommy Smalls, pulled Mr. Kane out of the car and

14   onto the street.  Felder told Smalls to get back in the car and

15   then he executed Mr. Kane with a single gunshot to the head, at

16   which point Felder got back into the car -- this time, into the

17   driver's street -- and drove the car to Yonkers, where he and

18   his cohorts robbed two different stores at gunpoint and pistol

19   whipped the woman I mentioned earlier.  Eventually, Felder and

20   his co-conspirators abandoned Mr. Kane's car in the Bronx,

21   after dousing it in bleach, and then casually -- and casually

22   is the right word -- casually walked away, as if nothing had

23   happened.  And I know this because I saw it on the video

24   surveillance evidence that was presented at trial.

25            One week later, Aboubacar Bah went to work and he,

 1    too, never came home.  Felder and his buddies convened at

 2    Takiem Ewing's apartment and they decided they would hijack

 3    another livery cab and rob a jewelry store.  Felder supplied

 4    the others with guns.  This time, Mr. Bah was the unlucky cab

 5    driver who picked up Felder and his three friends.  They

 6    directed him to the Hunts Point section of the Bronx and, just

 7    like with the first carjacking, Felder pulled out a gun and

 8    ordered Mr. Bah to get out.  But Mr. Bah didn't get out.

 9    Instead, he stepped on the gas.  So Felder shot Mr. Bah in the

10    head, killing him.  And the car rolled down the street, chased

11    by Felder and his crew.  I know this because I saw it with my

12    own eyes on the video evidence.  And eventually the car crashed

13    into a parked car, whereupon Felder pulled Mr. Bah out of the

14    car.  Didn't tend to his injuries.  He pulled him out of the

15    car, threw him on the ground, jumped in the driver's seat and

16    drove off.  A few minutes later, Felder and the others

17    abandoned the car and ran off, which I know because I saw it

18    with my own eyes on the video evidence.

19          And a few days after that, and only because of

20    outstanding police work, all four of them were apprehended;

21    Felder, Martin, Ewing and Smalls.

22          Those are the basic facts.  But the one thing that I

23    just can't get out of my mind, honestly, and I think about it a

24    lot, is I just can't get the images of these two executions out

25    of my mind.  I just can't.  These two men, immigrants from West

Africa, were just trying to earn a living, support their
families.  And I've read about that, of course, in the letters
I received today.  Driving cabs in the middle of the night in
dangerous neighborhoods in the Bronx.  They cared so much about
earning an honest living that they were willing to risk being
held up and robbed.  But they certainly didn't deserve to die.

Tyrone Felder, unlike Mr. Kane and Mr. Bah, hasn't
worked for an honest living for even one day in his life.  And
Mr. Felder decided that these two men's lives were so
unimportant and so inconsequential that they could be simply
executed and their bodies discarded in the street.  But their
lives were not unimportant or inconsequential.  They had
families, friends, co-workers.  They were the latest in a
century's-long line of decent and hard-working immigrants who
tried to find a better life for themselves and their families
in this country.  Their work was meaningful.  It provided an
important and valuable service to the people of the Bronx.
That's who they were.  I didn't know them, of course, but I do
know that they made far greater contributions to their
community than did Tyrone Felder.  And the only thing I can do
to honor their contributions and their memories is to ensure
that justice is done in this case.  And the only way to do
justice in this case is to impose a sentence that keeps Tyrone
Felder away from civilized society for the rest of his life.
That is the only way to hold Mr. Felder fully accountable for

1      his brutal crimes and to prevent him from terrorizing or

2      killing any other members of the law-abiding public.

3              Mr. Patel, doing his job -- and I'm not critical at

4      all, as I said earlier -- wants me to give his client a chance

5      to live a normal life for at least some small portion of the

6      rest of his life.  But Mr. Felder is directly and criminally

7      responsible for taking away Mr. Kane's chance and Mr. Bah's

8      chance to live any portion of their lives, normal or otherwise,

9      and, for that, Mr. Felder must spend the rest of his life in

10     jail.

11             The bottom line is that, given the nature and

12     circumstances of the offense and the history and

13     characteristics of the defendant, the sentence I intend to

14     impose is sufficient, but not greater than necessary to reflect

15     the seriousness of the offense, promote respect for the law,

16     provide just punishment for the offense, afford adequate

17     deterrence to criminal conduct and protect the public from

18     further crimes of the defendant.

19             Does either counsel know of any legal reason why the

20     sentence should not be imposed as stated?

21             Ms. Cohen?

22             MS. COHEN:  No, your Honor.

23             THE COURT:  Mr. Patel?

24             MR. PATEL:  No, your Honor.

25             THE COURT:  Mr. Felder, please stand.

201943felds

It is the judgment of this Court that you be committed to the custody of the United States Bureau of Prisons for a total term of life imprisonment plus 34 years imprisonment.

Specifically, the sentence is life imprisonment on Counts One and Seven and twenty years imprisonment on Counts Three, Five and Eleven, all of which is to run concurrently. In addition, the sentence is ten years imprisonment on each of Counts Two and Eight and seven years imprisonment on each of Counts Four and Six with the sentences on those counts Two, Four, Six and Eight to run consecutively to each other and consecutively to the sentence imposed on Counts One, Three, Five, Seven and Eleven.  Also, the sentence is imposed on counts Two, Four, Six and Eight, the gun counts, shall run consecutively to the 312-month sentence imposed on the defendant that the defendant is currently serving in case number 14 CR 546.  Finally, the life imprisonment sentence imposed on Counts One, Three, Five, Seven and Eleven shall run concurrently to the undischarged term of imprisonment in case number 14 CR 546 pursuant to Guidelines Section 5G1.3(d).

And in making that determination, I've considered all of the factors set forth in Section 3584 and the factors set forth in Application Note 4 to Guidelines Section 5G1.3(d).

I'm not imposing any term of supervised release. Under the circumstances, there would be no point served by

1    doing so.

2                I'm not imposing a fine because the defendant is

3    unable to pay a fine.

4                Restitution is not being sought here.

5                I am imposing the mandatory special assessment of

6    $100 per count, for a total of $900, which is due immediately.

7                The foregoing constitutes the sentence of the Court.

8                You may have a seat, sir.

9                Mr. Felder, you have the right to appeal your

10   conviction and sentence, and if you're unable to pay the cost

11   of an appeal, you may apply for leave to appeal without fee.

12   Actually, I've already granted that application.

13               A notice of appeal must be filed within 14 days after

14   the entry of judgment; therefore, if you do wish to appeal, you

15   must advise your attorney to prepare and file a notice of

16   appeal immediately or, if you request, the clerk will

17   immediately prepare and file a notice of appeal on your behalf.

18               There are open counts in underlying indictments; is

19   that correct?  This was the S3 indictment.

20               MS. COHEN:  Correct, your Honor.  There are

21   underlying indictments, which the government now moves to

22   dismiss.

23               THE COURT:  How many indictments are there?  Is it

24   more than one?  I just don't remember which one is which.

25               Well, look, it doesn't matter.  All the underlying

1    indictments -- in other words, everything other than the S3

2    indictment in which Mr. Felder is named -- are dismissed

3    without objection.

4            As far as recommendations to the federal correctional

5    complex at Allenwood, I'm willing to do that.  Of course, it's

6    entirely up to the Bureau of Prisons to decide where Mr. Felder

7    should be housed.  So I'm willing to recommend it, but I have

8    no particular expectation that the Bureau of Prisons will

9    listen to me.  Interestingly, I am familiar with the Bucknell

10   University program that you mentioned because I actually had a

11   client once who was a professional person and he was at

12   Allenwood and he taught at Bucknell, believe it or not, when he

13   was in prison.  So I'm aware of that, and I'm willing to

14   recommend that.

15           MR. PATEL:  Thank you.

16           THE COURT:  All right.  Is there anything else that

17   we need to do today?

18           Ms. Cohen?

19           MS. COHEN:  No.  Thank you, your Honor.

20           THE COURT:  Mr. Patel?

21           MR. PATEL:  No.

22           Your Honor, we will file the notice of appeal

23   promptly.  Thank you.

24           THE COURT:  Good luck to you, Mr. Felder.

25           Have a nice day, everybody.